M. Anderson Berry (262879)
Gregory Haroutunian (330263)
**CLAYEO C. ARNOLD**
**A PROFESSIONAL CORPORATION**
12100 Wilshire Boulevard, Suite 800
Los Angeles, CA 90025
Telephone: (916) 239-4778
*aberry@justice4you.com*
*gharoutunian@justice4you.com*

J. Gerard Stranch, IV (*pro hac vice* forthcoming)
Grayson Wells (*pro hac vice* forthcoming)
**STRANCH, JENNINGS & GARVEY, PLLC**
The Freedom Center
223 Rosa L. Parks Avenue, Suite 200
Nashville, TN 37203
Tel: (615) 254-8801
*gstranch@stranchlaw.com*
*gwells@stranchlaw.com*

*Attorneys for Plaintiff and the Putative Class*

# UNITED STATES DISTRICT COURT

## CENTRAL DISTRICT OF CALIFORNIA - WESTERN DIVISION

| | |
|---|---|
| RAMONA DURAN, individually and on behalf of all others similarly situated,<br><br>                    Plaintiff,<br>v.<br><br>PIH HEALTH, INC.,<br><br>                    Defendant. | Case No. _____<br><br>**CLASS ACTION COMPLAINT**<br><br>**DEMAND FOR JURY TRIAL** |

Plaintiff Ramona Duran ("Plaintiff"), brings this Class Action Complaint against Defendant PIH Health, Inc. ("Defendant" or "PIH"), individually and on behalf of all others similarly situated, and allege, upon personal knowledge as to her own actions and her counsel's investigation, and upon information and belief as to all other matters, as follows:

## I.    INTRODUCTION

1.      Plaintiff brings this class action against Defendant for its failure to properly secure and safeguard the protected health information ("PHI") and personally identifiable information ("PII") (together, "Private Information") of Plaintiff and other similarly situated patients of Defendant totaling approximately seventeen million individuals ("Class Members").

2.      Failing to implement reasonable cybersecurity measures has significant consequences for the patients whose records are leaked to cybercriminals and identity thieves.

3.      Hackers recently announced that they infiltrated Defendant's information systems, located troves of valuable patient data, and downloaded a staggering two terabytes of data containing the Private Information, including medical and health information, of seventeen (17) million patients.[1]

---

[1] Marianne Kolbasuk, *Hackers Steal 17M Patient Records in Attack on 3 Hospitals*, BANK INFO SECURITY (Dec. 13, 2024), https://www.bankinfosecurity.com/hackers-steal-17m-patient-records-in-attack-on-3-hospitals-a-27059.

4.    If Defendant refuses to pay the costly ransom, the hackers have threatened to release the stolen Private Information to even further cybercriminals, identity thieves, and the public at large via the dark web. The hackers said in a letter to a PIH: "Be informed, there was a Ghost in your network!" They continued: "So the ghost has taken your data as evidence, and if you're not going to cooperate and make a deal, then all your confidential files will be published on the internet."[2]

5.    The hack appears to be a double-extortion event, in which hackers steal patient data for extortion and fraud operations and then perform a ransomware attack to further seek a ransom payment.

6.    Indeed, because of the subsequent ransomware deployment, Defendant PIH has been unable to continue operations without disruptions. Though facilities remain largely open, electronic systems are down and PIH has had to resort to paper procedures, including requiring patients to "bring a paper copy of your physician order to your appointment."[3] Other outlets have said the phone system is down and that some surgeries have been cancelled.[4] And some have called Defendant's operations

---

[2] *Id.*

[3] *Id.*

[4] Monica De Anda, *Hackers Claim They've Obtained 17 Million Patient Records at PIH Health Hospitals, Reports Says* (Dec. 13, 2024), https://abc7.com/post/hackers-claim-obtained-17-million-patient-records-pih-health-hospitals-socal-report-says/15650598.

"paralyzed."[5]

7.      The hack comes just four years PIH experienced another data breach in 2020 when a phishing event affected more than 200,000. Rather than learn from that event, PIH appears to have failed again to improve its cybersecurity program to meet industry standards.

8.      Along with other Private Information, the Data Breach reportedly included 8.1 million "medical episodes," as well as treatment information (including for cancer patients), patient home addresses, phone numbers, employment information, and medical expenses.[6]

9.      Another news agency reported that the Data Breach affected:

- 17 million patient records that include personal and medical information.

- Data for more than 8.1 million "medical episodes" along with patient home addresses, phone numbers, places of employment and medical expenses.

- Lists of confidential diagnoses, test results, patient photos and scans.

[5] *Cyber Criminals Claim They Hacked 17 Million Patient Records at PIH Health Hospitals*, https://headtopics.com/us/cyber-criminals-claim-they-hacked-17-million-patient-63336317.

[6] *Id.*

-4-
CLASS ACTION COMPLAINT

- Treatments for thousands of patients, including those diagnosed with cancer.

- PIH's oncology profitability and monthly volumes.

- Private emails with patients about their treatments and test results.

- About 100 active nondisclosure agreements between PIH and other medical organizations and parties.

- Confidentiality agreements with employees.[7]

10.    Reportedly, the Data Breach has affected at least PIH Health Downey Hospital, PIH Health Whittier Hospital, and PIH Health Good Samaritan Hospital.[8]

11.    Though little is known about the Data Breach at this time, what is known establishes that Defendant PIH failed to implement reasonable cybersecurity measures, notwithstanding its recent attack that put it on notice of the risk of data breaches and the harms associated with them.

12.    For example, the hackers were able to infiltrate Defendant's information systems, perform the necessary reconnaissance efforts, identify valuable files, gain access to those files, and download a massive two terabyte trove of data all without

[7] Scott Schwebke, *Cyber Criminals Claim They Hacked 17 Million Patient Records at PIH Health Hospitals* (Dec. 12, 2024), https://www.ocregister.com/2024/12/12/cyber-criminals-claim-they-hacked-17-million-patient-records-at-pih-health-hospitals/.

[8] *Id.*

being caught. Indeed, the hackers never got caught until they wanted to be caught so that they could demand a ransom payment.

13.     The fact that the hackers could perform these noisy operations all without being caught strongly suggests that Defendant PIH failed to implement the necessary monitoring and alerting tools, like endpoint detection and response tools, sufficient to be able to timely identify malicious activity to empower its cybersecurity staff to stop or limit the attack.

14.     Moreover, it appears that Defendant failed to proper train its staff regarding cybersecurity events and threats, as is evident by the fact that the hackers had originally faxed a demand letter on November 30, 2024, which was ignored by Defendant's staff because they did not take it seriously.[9]

15.     Because of Defendant's failures, Plaintiff and the proposed Class Members have suffered a severe invasion of privacy and must now face a substantially increase in identity theft and fraud for years to come.

## II.    PARTIES

16.     Plaintiff Ramona Duran is a resident and citizen of the State of Washington.

///

---

[9] *Id.* ("A similar letter was faxed to PIH Whittier Hospital's Emergency Department on the evening of Nov. 30 but initially was not taken seriously by staff on duty, the worker said.").

-6-
CLASS ACTION COMPLAINT

17.    Defendant PIH Health, Inc. is a nonprofit corporation organized under the laws of California with its principal place of business in Whittier, California.

18.    Defendant's registered agent is located at 12401 Washington Boulevard, Whittier, California, 90602.

## III.    JURISDICTION AND VENUE

19.    The Court has general subject matter jurisdiction over this civil action under the Class Action Fairness Act, 28 U.S.C. § 1332(d) because the amount in controversy is easily more than $5,000,000 and minimal diversity exists. Specifically, the Data Breach affected at least seventeen million people with damages including California statutory damages between $100 and $750 each. Moreover, minimal diversity exists because Plaintiff is a citizen of Washington and Defendant is a citizen of California.

20.    This Court has personal jurisdiction over Defendant because its headquarters is in this State.

21.    Venue is proper in this Court because Plaintiff resides in this District and a substantial portion of the events giving rise to this Action occurred in this District.

## IV.    ADDITIONAL FACTUAL ALLEGATIONS

22.    The information held by Defendant in its computer systems at the time of the Data Breach included the unencrypted Private Information of Plaintiff and Class Members.

23.    Defendant made promises and representations to Plaintiff and Class Members that their PHI would be kept safe and confidential, and that the privacy of that information would be maintained.

24.    Plaintiff's and Class Members' Private Information was provided to Defendant with the reasonable expectation and on the mutual understanding that Defendant would comply with its obligations to keep such information confidential and secure from unauthorized access.

25.    Defendant had a duty to adopt reasonable measures to protect the Private Information of Plaintiff and Class Members from involuntary disclosure to third parties. Defendant has a legal duty to keep consumer's Private Information safe and confidential.

26.    Defendant had obligations created by the Federal Trade Commission Act, 15 U.S.C. § 45 ("FTCA" or "FTC Act"), HIPAA, industry standards, and implicit representations made to Plaintiff and Class Members, to keep their Private Information confidential and to protect it from unauthorized access and disclosure.

27.    By obtaining, collecting, using, and deriving a benefit from Plaintiff's and Class Members' PHI, Defendant assumed legal and equitable duties and knew or should have known it was responsible for protecting Plaintiff's and Class Members' Private Information from disclosure.

28.    Indeed, PIH represents that it takes cybersecurity seriously:

We understand that medical information about you and your health is personal. We are committed to protecting medical information about you. We create a record of the care and services you receive. We need this record to provide you with quality care and to comply with certain legal requirements. This notice applies to all of the records of your care generated by the hospital or its entities, whether made by hospital/entity personnel or your personal doctor.[10]

29.    Given these representations and the fact that PIH had experienced a prior data breach, PIH led its patients to believe that it took cybersecurity seriously and would protect their Private Information. Yet again, however, it failed to do so.

Defendant's Data Breach Was Imminently Foreseeable

30.    Defendant's data security obligations were particularly important given the substantial increase in cyberattacks and/or data breaches targeting institutions that collect and store Private Information, like Defendant, preceding the date of the Data Breach.

31.    Data thieves regularly target institutions like Defendant due to the highly sensitive information in their custody. Defendant knew and understood that unprotected Private Information is valuable and highly sought after by criminal parties who seek to illegally monetize that Private Information through unauthorized access.

---

[10] https://www.pihhealth.org/policies-legal-notices/privacy-policy.

CLASS ACTION COMPLAINT

32.    In 2021, a record 1,862 data breaches occurred, resulting in approximately 293,927,708 sensitive records being exposed, a 68% increase from 2020.[11]

33.    As a custodian of Private Information, Defendant knew, or should have known, the importance of safeguarding the Private Information entrusted to it by Plaintiff and Class Members, and of the foreseeable consequences if its data security systems were breached, including the significant costs imposed on Plaintiff and Class Members because of a breach.

34.    Despite the prevalence of public announcements of data breach and data security compromises, Defendant failed to take appropriate steps to protect the Private Information of Plaintiff and Class Members from being compromised.

35.    Defendant was, or should have been, fully aware of the unique type and the significant volume of data in its systems, amounting to potentially millions of individuals' detailed Private Information, and, thus, the significant number of individuals who would be harmed by the exposure of the unencrypted data.

36.    The injuries to Plaintiff and Class Members were directly and proximately caused by Defendant's failure to implement or maintain adequate data security measures for the Private Information of Plaintiff and Class Members.

---

[11] *See* Identity Theft Res. Ctr., *2021 Data Breach Annual Report*, at 6 (Jan. 2022), https://notified.idtheftcenter.org/s.

37.     The ramifications of Defendant's failure to keep secure the Private Information of Plaintiff and Class Members are long lasting and severe. Once Private Information is stolen, fraudulent use of that information and damage to victims may continue for years.

*Value of Personally Identifiable Information*

38.     The Federal Trade Commission ("FTC") defines identity theft as "a fraud committed or attempted using the identifying information of another person without authority."[12]   The FTC describes "identifying information" as "any name or number that may be used, alone or in conjunction with any other information, to identify a specific person," including, among other things, "[n]ame, Social Security number, date of birth, official State or government issued driver's license or identification number, alien registration number, government passport number, employer or taxpayer identification number."[13]

39.     The PII of individuals remains of high value to criminals, as evidenced by the prices they will pay through the dark web. Numerous sources cite dark web pricing for stolen identity credentials.[14]

---

[12] 17 C.F.R. § 248.201 (2013).

[13] *Id.*

[14] Anita George, *Your Personal Data Is for Sale on The Dark Web. Here's How Much It Costs,* DIGITAL TRENDS (Oct. 16, 2019), https://www.digitaltrends.com/computing/personal-data-sold-on-the-dark-web-how-much-it-costs.

40.    The information compromised in the Data Breach is even more significant because it includes health and medical information, which extraordinarily sensitive and private and is commonly used to perpetrate medical and insurance fraud.

41.    This data demands a much higher price on the black market. Martin Walter, senior director at cybersecurity firm RedSeal, explained, "Compared to credit card information, personally identifiable information . . . [is] worth more than 10x on the black market."[15]

42.    The fraudulent activity resulting from the Data Breach may not come to light for years. There may be a time lag between when harm occurs versus when it is discovered, and also between when PII is stolen and when it is used. According to the U.S. Government Accountability Office ("GAO"), which conducted a study regarding data breaches:

> [L]aw enforcement officials told us that in some cases, stolen data may be held for up to a year or more before being used to commit identity theft. Further, once stolen data have been sold or posted on the Web, fraudulent use of that information may continue for years. As a result, studies that attempt to measure

---

[15] Tim Greene, *Anthem Hack: Personal Data Stolen Sells for 10x Price of Stolen Credit Card Numbers*, (Feb. 6, 2015), https://www.networkworld.com/article/2880366/anthem-hack-personal-data-stolen-sells-for-10x-price-of-stolen-credit-card-numbers.html.

the harm resulting from data breaches cannot necessarily rule out all future harm.[16]

*Defendant Failed to Comply with FTC Guidelines*

43.    The FTC has promulgated numerous guides for businesses which highlight the importance of implementing reasonable data security practices. According to the FTC, the need for data security should be factored into all business decision making. Indeed, the FTC has concluded that a company's failure to maintain reasonable and appropriate data security for consumers' sensitive personal information is an "unfair practice" in violation of Section 5 of the FTCA, 15 U.S.C. § 45. *See, e.g.*, *FTC v. Wyndham Worldwide Corp.*, 799 F.3d 236 (3d Cir. 2015).

44.    In October 2016, the FTC updated its publication, Protecting Personal Information: A Guide for Business, which established cybersecurity guidelines for businesses. The guidelines note that businesses should protect the personal consumer information they keep, properly dispose of personal information that is no longer needed, encrypt information stored on computer networks, understand their network's vulnerabilities, and implement policies to correct any security problems. The guidelines also recommend that businesses use an intrusion detection system to expose a breach as soon as it occurs, monitor all incoming traffic for activity indicating

---

[16] *Report to Congressional Requesters*, GAO, at 29 (June 2007), https://www.gao.gov/assets/gao-07-737.pdf.

someone is attempting to hack into the system, watch for large amounts of data being transmitted from the system, and have a response plan ready in the event of a breach.

45.    The FTC further recommends that companies not maintain PII longer than is needed for authorization of a transaction, limit access to sensitive data, require complex passwords to be used on networks, use industry-tested methods for security, monitor the network for suspicious activity, and verify that third-party service providers have implemented reasonable security measures.

46.    The FTC has brought enforcement actions against businesses for failing to adequately and reasonably protect consumer data by treating the failure to employ reasonable and appropriate measures to protect against unauthorized access to confidential consumer data as an unfair act or practice prohibited by the FTC Act. Orders resulting from these actions further clarify the measures businesses must take to meet their data security obligations.

47.    As evidenced by the Data Breach, Defendant failed to properly implement basic data security practices and failed to audit, monitor, or ensure the integrity of its data security practices, or to appropriately prepare to face a data breach and respond to it in a timely manner. Defendant's failure to employ reasonable and appropriate measures to protect against unauthorized access to Plaintiff's and Class Members' PII constitutes an unfair act or practice prohibited by Section 5 of the FTC Act.

48.     Defendant was at all times fully aware of its obligation to protect the PII of consumers under the FTC Act yet failed to comply with such obligations. Defendant was also aware of the significant repercussions that would result from its failure to do so. Accordingly, Defendant's conduct was particularly unreasonable given the nature and amount of PII it obtained and stored and the foreseeable consequences of the immense damages that would result to Plaintiff and the Class.

Defendant Failed to Comply with HIPAA

49.     Defendant is a covered entity under HIPAA (45 C.F.R. § 160.102) and is required to comply with the HIPAA Privacy Rule and Security Rule, 45 C.F.R. Part 160 and Part 164, Subparts A and E ("Standards for Privacy of Individually Identifiable Health Information"), and Security Rule ("Security Standards for the Protection of Electronic Protected Health Information"), 45 C.F.R. Part 160 and Part 164, Subparts A and C.

50.     Defendant is subject to the rules and regulations for safeguarding electronic forms of medical information pursuant to the Health Information Technology Act ("HITECH"). *See* 42 U.S.C. § 17921, 45 C.F.R. § 160.103.

51.     HIPAA's Privacy Rule or Standards for Privacy of Individually Identifiable Health Information establishes national standards for the protection of health information.

52.     HIPAA's Privacy Rule or Security Standards for the Protection of

Electronic Protected Health Information establishes a national set of security standards for protecting health information that is kept or transferred in electronic form.

53. HIPAA requires "comply[iance] with the applicable standards, implementation specifications, and requirements" of HIPAA "with respect to electronic protected health information." 45 C.F.R. § 164.302.

54. "Electronic protected health information" is "individually identifiable health information … that is (i) transmitted by electronic media; maintained in electronic media." 45 C.F.R. § 160.103.

55. HIPAA's Security Rule requires defendants to do the following:

a. Ensure the confidentiality, integrity, and availability of all electronic protected health information the covered entity or business associate creates, receives, maintains, or transmits;

b. Protect against any reasonably anticipated threats or hazards to the security or integrity of such information;

c. Protect against any reasonably anticipated uses or disclosures of such information that are not permitted; and

d. Ensure compliance by its workforce.

56. HIPAA also requires Defendant to "review and modify the security measures implemented . . . as needed to continue provision of reasonable and

appropriate protection of electronic protected health information." 45 C.F.R. § 164.306(e). Additionally, Defendant is required under HIPAA to "[i]implement technical policies and procedures for electronic information systems that maintain electronic protected health information to allow access only to those persons or software programs that have been granted access rights." 45 C.F.R. § 164.312(a)(1).

57.    HIPAA and HITECH also obligated Defendant to implement policies and procedures to prevent, detect, contain, and correct security violations, and to protect against uses or disclosures of electronic protected health information that are reasonably anticipated but not permitted by the privacy rules. *See* 45 C.F.R. § 164.306(a)(1) and § 164.306(a)(3); *see also* 42 U.S.C. §17902.

58.    The HIPAA Breach Notification Rule, 45 C.F.R. §§ 164.400–414, also requires Defendant to provide notice of the Data Breach to each affected individual "without unreasonable delay and in no case later than 60 days following discovery of the breach."

59.    HIPAA requires a covered entity to have and apply appropriate sanctions against members of its workforce who fail to comply with the privacy policies and procedures of the covered entity or the requirements of 45 C.F.R. Pt. 164, Subparts D or E. *See* 45 C.F.R. § 164.530(e).

60.    HIPAA requires a covered entity to mitigate, to the extent practicable, any harmful effect that is known to the covered entity of a use or disclosure of

protected health information in violation of its policies and procedures or the requirements of 45 C.F.R. Part 164, Subpart E by the covered entity or its business associate. *See* 45 C.F.R. § 164.530(f).

61.    HIPAA also requires the Office of Civil Rights ("OCR"), within the Department of Health and Human Services ("HHS"), to issue annual guidance documents on the provisions in the HIPAA Security Rule. *See* 45 C.F.R. §§ 164.302–164.318. For example, "HHS has developed guidance and tools to assist HIPAA covered entities in identifying and implementing the most cost effective and appropriate administrative, physical, and technical safeguards to protect the confidentiality, integrity, and availability of e-PHI and comply with the risk analysis requirements of the Security Rule." US Department of Health & Human Services, Security Rule Guidance Material. The list of resources includes a link to guidelines set by the National Institute of Standards and Technology (NIST), which OCR says "represent the industry standard for good business practices with respect to standards for securing e-PHI." US Department of Health & Human Services, Guidance on Risk Analysis.

62.    Defendant was at all times fully aware of its HIPAA obligations to protect the PHI of consumers yet failed to comply with such obligations. Defendant was also aware of the significant repercussions that would result from its failure to do so. Accordingly, Defendant's conduct was particularly unreasonable given the nature

and amount of PHI it obtained and stored and the foreseeable consequences of the immense damages that would result to Plaintiffs and the Class.

Defendant Failed to Comply with Industry Standards.

63.    Experts studying cybersecurity routinely identify institutions that store Private Information like Defendant as being particularly vulnerable to cyberattacks because of the value of the Private Information which they collect and maintain.

64.    Some industry best practices that should be implemented by institutions dealing with sensitive Private Information, like Defendant, include, but are not limited to: educating all employees, strong password requirements, multilayer security including firewalls, anti-virus and anti-malware software, encryption, multi-factor authentication, backing up data, implementing reasonable systems to identify malicious activity, implementing reasonable governing policies, and limiting which employees can access sensitive data. As evidenced by the Data Breach and its timeline, Defendant failed to follow some or all these industry best practices.

65.    Other best cybersecurity practices that are standard at large institutions that store Private Information include: installing appropriate malware detection software; monitoring and limiting network ports; protecting web browsers and email management systems; setting up network systems such as firewalls, switches, and routers; monitoring and protecting physical security systems; and training staff regarding these points.

66.     Defendant failed to meet the minimum standards of any of the following frameworks: the NIST Cybersecurity Framework Version 2.0 (including without limitation PR.AA-01, PR.AA.-02, PR.AA-03, PR.AA-04, PR.AA-05, PR.AT-01, PR.DS-01, PR-DS-02, PR.DS-10, PR.PS-01, PR.PS-02, PR.PS-05, PR.IR-01, DE.CM-01, DE.CM-03, DE.CM-06, DE.CM-09, and RS.CO-04), and the Center for Internet Security's Critical Security Controls (CIS CSC), which are all established standards in reasonable cybersecurity readiness.

67.     Defendant failed to comply with these accepted standards, thereby permitting the Data Breach to occur.

Common Injuries & Damages

*68.*     Because of Defendant's ineffective and inadequate data security practices, the Data Breach, and the foreseeable consequences of Private Information ending up in the possession of criminals, the risk of identity theft to the Plaintiff and Class Members has materialized and is imminent, and Plaintiff and Class Members have all sustained actual injuries and damages, including: (a) invasion of privacy; (b) loss of time and loss of productivity incurred mitigating the materialized risk and imminent threat of identity theft risk; (c) the loss of benefit of the bargain (price premium damages); and (d) the continued risk to their Private Information, which remains in the possession of Defendant, and which is subject to further breaches, so long as Defendant fails to undertake appropriate and adequate measures to protect

*Plaintiff's and Class Members' Private Information. The Data Breach Increases*
*Victims' Risk of Identity Theft and Fraud*

69.    Plaintiff and Class Members are at a heightened risk of identity theft for years to come, especially because Defendant's failures resulted in Plaintiff's and Class Members' Private Information falling into the hands of identity thieves.

70.    The unencrypted Private Information of Class Members has already or will end up for sale on the dark web because that is the *modus operandi* of hackers. Indeed, when these criminals do not post the data to the dark web, it is usually at least sold on private Telegram channels to even further identity thieves who purchase the Private Information for the express purpose of conducting financial fraud and identity theft operations.

71.    Further, the standard operating procedure for cybercriminals is to use some data, like the PHI here, to access "fullz packages" of that person to gain access to the full suite of additional PHI that those cybercriminals have access through other means. Using this technique, identity thieves piece together full pictures of victim's information to perpetrate even more types of attacks.[17]

---

[17] "Fullz" is fraudster speak for data that includes the information of the victim, including, but not limited to, the name, address, credit card information, social security number, date of birth, and more. As a rule of thumb, the more information you have on a victim, the more money that can be made off those credentials. Fullz are usually pricier than standard credit card credentials, commanding up to $100 per record (or more) on the dark web. Fullz can be cashed out (turning credentials into money) in various ways, including performing bank transactions over the phone with

72.     With "Fullz" packages, cyber-criminals can cross-reference two sources of Private Information to marry unregulated data available elsewhere to criminally stolen data with an astonishingly complete scope and degree of accuracy to assemble complete dossiers on individuals.

73.     The development of "Fullz" packages means here that the stolen Private Information from the Data Breach can easily be used to link and identify it to Plaintiff's and Class Members' phone numbers, email addresses, and other unregulated sources and identifiers. In other words, even if certain information such as emails, phone numbers, or credit card numbers may not be included in the Private Information that was exfiltrated in the Data Breach, criminals may still easily create a Fullz package and sell it at a higher price to unscrupulous operators and criminals (such as illegal and scam telemarketers) over and over.

*Loss of Time to Mitigate Risk of Identity Theft and Fraud*

74.     Because of the recognized risk of identity theft, when a data breach occurs, and an individual is notified by a company that their Private Information was

---

the required authentication details in-hand. Even "dead Fullz," which are Fullz credentials associated with credit cards that are no longer valid, can still be used for numerous purposes, including tax refund scams, ordering credit cards on behalf of the victim, or opening a "mule account" (an account that will accept a fraudulent money transfer from a compromised account) without the victim's knowledge. *See, e.g.*, Brian Krebs, *Medical Records for Sale in Underground Stolen from Texas Life Insurance Firm*, Krebs on Security (Sep. 18, 2014), https://krebsonsecuritv.com/2014/09/medical-records-for-sale-in-underground-stolen-from-texas-life-insurance-firm.

compromised, as in this Data Breach, the reasonable person is expected to take steps and spend time to address the dangerous situation, learn about the breach, and otherwise mitigate the risk of becoming a victim of identity theft of fraud. Failure to spend time taking steps to review accounts or credit reports could expose the individual to greater financial harm and a Defendant arguing that the individual failed to mitigate damages.

75.     The need to spend time mitigating the risk of harm is especially important in cases like this where Plaintiff's and Class Members' Private Information is affected because such information is commonly used to commit medical and insurance fraud.

76.     By spending this time, data breach Plaintiff is not manufacturing her own harm but is taking necessary steps at Defendant's direction and because the Data Breach included her Private Information.

77.     Plaintiff and Class Members have spent, and will spend additional time in the future, on a variety of prudent actions to remedy the harms they have or may experience because of the Data Breach, such as contacting credit bureaus to place freezes on their accounts; changing passwords and re-securing their own computer networks; and checking their financial accounts and health insurance statements for any indication of fraudulent activity, which may take years to detect.

78.     These efforts are consistent with the U.S. Government Accountability Office that released a report in 2007 regarding data breaches ("GAO Report") in which

it noted that victims of identity theft will face "substantial costs and time to repair the damage to their good name and credit record."[18]

79.    These efforts are also consistent with the steps that FTC recommends that data breach victims take to protect their personal and financial information after a data breach, including: contacting one of the credit bureaus to place a fraud alert (and considering an extended fraud alert that lasts for seven years if someone steals their identity), reviewing their credit reports, contacting companies to remove fraudulent charges from their accounts, placing a credit freeze on their credit, and correcting their credit reports.[19]

*The Future Cost of Credit and Identity Theft Monitoring Is Reasonable and Necessary*

80.    Based on the value of the information stolen, the data either has or will be sold to cybercriminals whose mission it is to perpetrate identity theft and fraud. Even if the data is not posted online, these data are ordinarily sold and transferred through private Telegram channels wherein thousands of cybercriminals participate in a market for such data so that they can misuse it and earn money from financial fraud and identity theft of data breach victims.

81.    Such fraud may go undetected for years; consequently, Plaintiff and

---

[18] *See* U.S. Gov't Office, GAO-07-737, *Personal Information: Data Breaches Are Frequent, but Evidence of Resulting Identity Theft Is Limited; However, the Full Extent Is Unknown* (June 2007), https://www.gao.gov/new.items/d07737.pdf.

[19] *See* Fed. Trade Comm'n, *Identity Theft.gov*, https://www.identitytheft.gov/Steps.

Class Members are at a present and continuous risk of fraud and identity theft for many years into the future.

82.    The retail cost of credit monitoring and identity theft monitoring can cost $200 or more per year per Class Member. This is a reasonable and necessary cost to monitor and protect Class Members from the risk of identity theft that arose from the Data Breach. This is a future cost for a minimum of seven years that Plaintiff and Class Members would not need to bear but for Defendant's failure to safeguard their Private Information.

*Plaintiff's Experience*

83.    Plaintiff provided her Private Information to Defendant as a condition of receiving medical and healthcare service from Defendant.

84.    At the time of the Data Breach, Defendant retained Plaintiff's Private Information in its system.

85.    Plaintiff received notice from Defendant that she was affected by the Data Breach.

86.    Upon information and belief, Plaintiff's Private Information was compromised in the Data Breach and stolen by cybercriminals who illegally accessed Defendant's network for the specific purpose of targeting Private Information.

87.    Because of the Data Breach, Plaintiff has suffered a loss of time, interference, and inconvenience because of the Data Breach. Plaintiff has also

experienced anxiety and sleep disruption due to increased concerns for the loss of her privacy.

88.    Plaintiff has suffered imminent and impending injury arising from the substantially increased risk of fraud, identity theft, and misuse resulting from her Private Information being placed in the hands of the very people whose mission it is to use that data to steal Plaintiff's identity and to attempt financial fraud. Indeed, as noted previously, the hackers have threatened to release the stolen Private Information to even further cybercriminals, identity thieves, and the public at large via the dark web.

89.    Moreover, the breach of her medical and health information exposes Plaintiff and the Class to a significantly increased risk of medical and health insurance fraud.

90.    Critically, the breach of this type of Private Information represents a brazen invasion of privacy, which is a harm long recognized in American courts.

## V.    CLASS ALLEGATIONS

91.    Plaintiff brings this action on behalf of herself and on behalf of all members of the proposed class defined as:

All United States residents whose Private Information was compromised in the Data Breach ("Class").

92.    Excluded from the Class are the following individuals and/or entities: Defendant and Defendant's parents, subsidiaries, affiliates, officers and directors, and any entity in which Defendant has a controlling interest; all individuals who make a timely election to be excluded from this proceeding using the correct protocol for opting out; and all judges assigned to hear any aspect of this litigation, as well as their immediate family members.

93.    Plaintiff reserves the right to amend the definition of the proposed Class or to add a subclass before the Court determines whether certification is appropriate.

94.    The proposed Class meets the criteria certification under Federal Rule of Civil Procedure 23(a), (b)(1), (b)(2), and (b)(3).

95.    <u>Numerosity.</u> The Class Members are so numerous that joinder of all members is impracticable. Upon information and belief, Plaintiff believes the proposed Class includes millions of individuals who have been damaged by Defendant's conduct as alleged herein. The precise number of Class Members is unknown to Plaintiff but may be ascertained from Defendant's records. Reportedly, the Data Breach has affected at least seventeen (17) million patients.

96.    <u>Commonality.</u> There are questions of law and fact common to the Class which predominate over any questions affecting only individual Class Members. These common questions of law and fact include, without limitation:

- Whether Defendant engaged in the conduct alleged herein;

- Whether Defendant's conduct violated the FTC Act and HIPAA;

- When Defendant learned of the Data Breach;

- Whether Defendant failed to implement and maintain reasonable security procedures and practices appropriate to the nature and scope of the Private Information compromised in the Data Breach;

- Whether Defendant's data security systems prior to and during the Data Breach complied with applicable data security laws and regulations;

- Whether Defendant's data security systems, prior to and during the Data Breach, were consistent with industry standards;

- Whether Defendant owed duties to Class Members to safeguard her Private Information;

- Whether Defendant breached her duties to Class Members to safeguard her Private Information;

- Whether hackers obtained Class Members' Private Information via the Data Breach;

- Whether Defendant had a legal duty to provide timely and accurate notice of the Data Breach to Plaintiff and Class Members;

- Whether Defendant breached its duty to provide timely and accurate notice of the Data Breach to Plaintiff and Class Members;

- Whether Defendant knew or should have known its data security systems and monitoring processes were deficient;

- What damages Plaintiff and Class Members suffered as a result of Defendant's misconduct;

- Whether Defendant's conduct was negligent;

- Whether Defendant breached contracts it had with its clients, which were made expressly for the benefit of Plaintiff and Class Members;

- Whether Plaintiff and Class Members are entitled to damages;

- Whether Plaintiff and Class Members are entitled to additional credit or identity monitoring and monetary relief; and among other things,

- Whether Plaintiff and Class Members are entitled to equitable relief, including injunctive relief, restitution, disgorgement, and/or the establishment of a constructive trust.

97.    Typicality. Plaintiff's claims are typical of those of other Class Members because Plaintiff's Private Information, like that of every other Class Member, was compromised in the Data Breach. Plaintiff's claims are typical of those of the other Class Members because, *inter alia*, all Class Members were injured through the common misconduct of Defendant. Plaintiff is advancing the same claims and legal theories on behalf of themselves and all other Class Members, and there are no defenses that are unique to Plaintiff. The claims of Plaintiff and those of Class

Members arise from the same operative facts and are based on the same legal theories.

98. _Adequacy of Representation._ Plaintiff will fairly and adequately represent and protect the interests of Class Members. Plaintiff's counsel is competent and experienced in litigating class actions, including data privacy litigation of this kind.

99. _Predominance._ Defendant has engaged in a common course of conduct toward Plaintiff and Class Members. For example, all of Plaintiff's and Class Members' data was stored on the same computer systems and unlawfully accessed and exfiltrated in the same way. The common issues arising from Defendant's conduct affecting Class Members set out above predominate over any individualized issues. Adjudication of these common issues in a single action has important and desirable advantages of judicial economy.

100. _Superiority._ A class action is superior to other available methods for the fair and efficient adjudication of this controversy and no unusual difficulties are likely to be encountered in the management of this class action. Class treatment of common questions of law and fact is superior to multiple individual actions or piecemeal litigation. Absent a class action, most Class Members would likely find that the cost of litigating their individual claims is prohibitively high and would therefore have no effective remedy. The prosecution of separate actions by individual Class Members would create a risk of inconsistent or varying adjudications with respect to individual

Class Members, which would establish incompatible standards of conduct for Defendant. In contrast, conducting this action as a class action presents far fewer management difficulties, conserves judicial resources and the parties' resources, and protects the rights of each Class Member.

101. Class certification is also appropriate. Defendant has acted and/or refused to act on grounds generally applicable to the Class such that final injunctive relief and/or corresponding declaratory relief is appropriate as to the Class as a whole.

102. Finally, all members of the proposed Class are readily ascertainable. Defendant has access to the names and addresses and/or email addresses of Class Members affected by the Data Breach, as is evident by Defendant's ability to send those individuals notification letters.

## CLAIMS FOR RELIEF

### COUNT I
### NEGLIGENCE AND NEGLIGENCE PER SE
### (On Behalf of Plaintiff and the Class)

103. Plaintiff incorporates the above allegations as if fully set forth herein.

104. Plaintiff and Class Members provided their non-public Private Information to Defendant as a condition of receiving medical and healthcare services.

105. Defendant had full knowledge of the sensitivity of the Private Information and the types of harm that Plaintiff and Class Members could and would suffer if the Private Information were wrongfully disclosed.

106.    By assuming the responsibility to collect and store this data, Defendant had duties of care to use reasonable means to secure and to prevent disclosure of the information, and to safeguard the information from theft.

107.    Defendant had duties to employ reasonable security measures under Section 5 of the FTCA, 15 U.S.C. § 45, which prohibits "unfair . . . practices in or affecting commerce," including, as interpreted and enforced by the FTC, the unfair practice of failing to use reasonable measures to protect confidential data.

108.    Defendant's duty to use reasonable security measures also arose under the common law, and as informed by the FTC Act and HIPAA, which mandates that Defendant implement reasonable cybersecurity measures.

109.    Defendant owed a duty of care to Plaintiff and Class Members to provide data security consistent with industry standards and other requirements discussed herein, and to ensure that its systems and networks, and the personnel responsible for them, adequately protected the Private Information.

110.    Moreover, Defendant had a duty to promptly and adequately notify Plaintiff and Class Members of the Data Breach.

111.    Defendant had and continues to have duties to adequately disclose that the Private Information of Plaintiff and Class Members within Defendant's possession might have been compromised, how it was compromised, and precisely the types of data that were compromised and when. Such notice is necessary to allow Plaintiff and

Class Members to take steps to prevent, mitigate, and repair any identity theft and the fraudulent use of their Private Information by third parties.

112.    Defendant breached its duties, pursuant to the FTC Act, HIPAA, and other applicable standards, and thus was negligent, by failing to use reasonable measures to protect Class Members' PHI. The specific negligent acts and omissions committed by Defendant include, but are not limited to, the following:

- Failing to adopt, implement, and maintain adequate security measures to safeguard Class Members' Private Information;

- Allowing unauthorized access to Class Members' Private Information;

- Failing to remove Plaintiff's and Class Members' Private Information it was no longer required to retain pursuant to regulations; and

- Failing to implement a reasonable cybersecurity incident response plan that would have enabled Defendant to timely and adequately notify Class Members about the Data Breach's occurrence and scope, so they could take appropriate steps to mitigate the potential for identity theft and other damages.

113.    Defendant's conduct was particularly unreasonable given the nature and amount of PHI it obtained and stored and the foreseeable consequences of the immense damages that would result to Plaintiff and Class Members.

114.    Defendant's violation of the FTC Act and HIPAA also constitutes

negligence *per se*, as those provisions are designed to protect individuals like Plaintiff and the proposed Class Members from the harms associated with data breaches.

115. Defendant has admitted that the Private Information of Plaintiff and Class Members was wrongfully lost and disclosed to unauthorized third persons because of the Data Breach.

116. But for Defendant's wrongful and negligent breaches of duties owed to Plaintiff and Class Members, the Private Information of Plaintiff and Class Members would not have been compromised.

117. There is a close causal connection between Defendant's failure to implement security measures to protect the Private Information of Plaintiff and Class Members and the harm, or risk of imminent harm, suffered by Plaintiff and Class Members. The Private Information of Plaintiff and Class Members was lost and accessed as the proximate result of Defendant's failure to exercise reasonable care in safeguarding such Private Information by adopting, implementing, and maintaining appropriate security measures.

118. As a direct and proximate result of Defendant's conduct, Plaintiff and Class Members have suffered and will suffer injury, including but not limited to: (i) invasion of privacy; (ii) theft of their Private Information; (iii) lost time and opportunity costs associated with attempting to mitigate the actual consequences of the Data Breach; (iv) lost opportunity costs associated with attempting to mitigate the

actual consequences of the Data Breach; (v) experiencing an increase in spam calls, texts, and/or emails; (vi) statutory damages; (vii) nominal damages; and (viii) the continued and certainly increased risk to their PHI, which: (a) remains unencrypted and available for unauthorized third parties to access and abuse; and (b) remains backed up in Defendant's possession and is subject to further unauthorized disclosures so long as Defendant fails to undertake appropriate and adequate measures to protect the Private Information.

119. As a direct and proximate result of Defendant's negligence and negligence *per se*, Plaintiff and the Class have suffered and will continue to suffer other forms of injury and/or harm, including, but not limited to, anxiety, emotional distress, loss of privacy, and other economic and non-economic losses.

120. Additionally, as a direct and proximate result of Defendant's negligence and negligence *per se*, Plaintiff and the Class have suffered and will suffer the continued risks of exposure of their Private Information, which remain in Defendant's possession and is subject to further unauthorized disclosures so long as Defendant fail to undertake appropriate and adequate measures to protect the Private Information in its continued possession.

121. Plaintiff and Class Members are therefore entitled to damages, including restitution and unjust enrichment, declaratory and injunctive relief, and attorneys' fees, costs, and expenses.

122.   Given Defendant's failures to implement the proper systems, as defined above, even knowing the ubiquity of the threat of data breaches, Defendant's decision not to invest enough resources in its cyber defenses amounts to gross negligence.

<u>**COUNT II**</u>
**BREACH OF IMPLIED CONTRACT**
**(On Behalf of Plaintiff and the Class)**

123.   Plaintiff incorporates the above allegations as if fully set forth herein.

124.   Plaintiff and the proposed Class Members transferred their Private Information to Defendant as part of receiving medical and health services.

125.   Plaintiff and Class Members conferred a monetary benefit on Defendant. Specifically, they provided Defendant with their Private Information. In exchange, Defendant should have provided adequate data security for Plaintiff and Class Members and implicitly agreed to do so.

126.   Defendant knew that Plaintiff and Class Members conferred a benefit on it in the form their PHI as a necessary part of receiving healthcare.

127.   Defendant, however, failed to secure Plaintiff and Class Members' Private Information and, therefore, did not provide adequate data security in return for the benefit Plaintiff and Class Members provided.

128.   If Plaintiff and Class Members knew that Defendant had not reasonably secured their PHI, they would not have allowed it to be provided to Defendant.

129.   As a direct and proximate result of Defendant's conduct, Plaintiff and

Class Members have suffered and will suffer injury, including but not limited to: (i) invasion of privacy; (ii) theft of their Private Information; (iii) lost time and opportunity costs associated with attempting to mitigate the actual consequences of the Data Breach; (iv) lost opportunity costs associated with attempting to mitigate the actual consequences of the Data Breach; (v) experiencing an increase in spam calls, texts, and/or emails; (vi) statutory damages; (vii) nominal damages; and (viii) the continued and certainly increased risk to their Private Information, which: (a) remains unencrypted and available for unauthorized third parties to access and abuse; and (b) remains backed up in Defendant's possession and is subject to further unauthorized disclosures so long as Defendant fails to undertake appropriate and adequate measures to protect the Private Information.

## COUNT III
## UNJUST ENRICHMENT
### (On Behalf of Plaintiff and the Class)

130.    Plaintiff incorporates the above allegations as if fully set forth herein.

131.    This claim is pleaded in the alternative to the breach of implied contractual duty claim.

132.    Plaintiff and Class Members conferred a benefit upon Defendant in the form of Private Information provided to Defendant, along with payment, as a condition of receiving medical and healthcare services.

133.    Defendant appreciated or had knowledge of the benefits conferred upon

them by Plaintiff and Class Members.

134.   Because of Defendant's conduct, Plaintiff and Class Members suffered actual damages in an amount equal to the difference in value between the value of services with reasonable data privacy and security practices and procedures, and the services without unreasonable data privacy and security practices and procedures that they received.

135.   Under principles of equity and good conscience, Defendant should not be permitted to retain the full value of Plaintiff's and the proposed Class Members' monies paid and their Private Information because Defendant failed to adequately protect their Private Information. Plaintiff and the Class Members would not have provided their Private Information, nor paid Defendant, had they known Defendant would not adequately protect their Private Information.

136.   Defendant should be compelled to disgorge into a common fund for the benefit of Plaintiff and Class Members all unlawful or inequitable proceeds received by it because of their misconduct and the Data Breach alleged herein.

**COUNT IV**
**BREACH OF BAILMENT**
**(On Behalf of Plaintiff and the Class)**

137.   Plaintiff incorporates the above allegations as if fully set forth herein.

138.   Plaintiff conveyed her Private Information to Defendant lawfully as a condition of employment with the understanding that Defendant would return or

delete her Private Information when it was no longer required.

139.   Defendant accepted this Private Information on the implied understanding that Defendant would honor its obligations under federal regulations, state law, and industry standards to safeguard Plaintiff's Private Information and act on the Private Information only within the confines of the purposes for which Defendant collected Plaintiff's Private Information.

140.   By accepting Plaintiff's data and storing it on its systems, Defendant had exclusive control over the privacy of Plaintiff's data in that Plaintiff had no control over whether Defendant's copy of Plaintiff's Private Information was protected with sufficient safeguards and indeed only Defendant had that control.

141.   By failing to implement reasonable cybersecurity safeguards, as detailed above, Defendant breached this bailment agreement causing harm to Plaintiff in the form of violations of her right to privacy and to self-determination of who had/has access to her Private Information, in the form of requiring her to spend her own valuable time responding to Defendant's failures, and in the form of forcing Plaintiff and the Class to face years of substantially increased risk of identity theft and financial fraud.

## COUNT V
## INVASION OF PRIVACY
### (On Behalf of Plaintiff and the Class)

142.   Plaintiff incorporates the above allegations as if fully set forth herein.

143.   Plaintiff and Class members took reasonable and appropriate steps to keep their Private Information confidential from the public.

144.   Plaintiff's and Class members' efforts to safeguard their own Private Information were successful, as their Private Information was not known to the public prior to the Data Breach.

145.   Plaintiff and Class members had a legitimate expectation of privacy to their Private Information and were entitled to the protection of this information against disclosure to unauthorized third parties.

146.   Defendant owed a duty to its patients, including Plaintiff and the proposed Class Members, to keep their Private Information confidential.

147.   The unauthorized release of Private Information is highly offensive to any reasonable person.

148.   Plaintiff's and Class members' Private Information is not of legitimate concern to the public.

149.   Defendant knew or should have known that Plaintiff's and Class members' Private Information was private.

150.   Defendant publicized Plaintiff's and Class members' Private Information, by communicating it to cybercriminals who had no legitimate interest in this Private Information and who had the express purpose of monetizing that information by injecting it into the illicit stream of commerce flowing through the

dark web and other malicious channels of communication (e.g., Telegram and Signal).

151.    It is therefore substantially certain that the Plaintiff's and the Class members' Private Information is rapidly becoming public knowledge–among the community writ large–due to the nature of the malware attack that procured it, and the identity theft that it is designed for.

152.    Moreover, because of the ubiquitous nature of data breaches, especially in the healthcare industry, Defendant was substantially certain that a failure to protect Private Information would lead to its disclosure to unauthorized third parties, including the thousands of waiting identity thieves who are in a special relationship to Plaintiff and the proposed Class Members—in that those identity thieves are precisely the individuals whose aim it is to misuse such Private Information.

153.    Unless and until enjoined, and restrained by order of this Court, Defendant's wrongful conduct will continue to cause great and irreparable injury to Plaintiff and Class Members in that Defendant's inadequate data security measures will likely result in additional data breaches. Plaintiff and Class members have no adequate remedy at law for the injuries that they will sustain in that a judgment for monetary damages will not prevent further invasions of the Plaintiff's and Class members' privacy by Defendant.

## **PRAYER FOR RELIEF**

WHEREFORE, Plaintiff, on behalf of herself and all Class Members, requests judgment against Defendant and that the Court grant the following:

A.  For an Order certifying this action as a class action and appointing Plaintiff and her counsel to represent the Class;

B.  For equitable relief enjoining Defendant from engaging in the wrongful conduct complained of herein pertaining to the misuse and/or disclosure of Plaintiff's and Class Members' Private Information, and from refusing to issue prompt, complete, and accurate disclosures to Plaintiff and Class Members;

C.  For injunctive relief requested by Plaintiff, including, but not limited to, injunctive and other equitable relief as is necessary to protect the interests of Plaintiff and Class Members, including but not limited to an order:

    i.  prohibiting Defendant from engaging in the wrongful and unlawful acts described herein;

    ii.  requiring Defendant to protect, including through encryption, all data collected through the course of its business in accordance with all applicable regulations, industry standards, and federal, state, or local laws;

1

iii.    requiring Defendant to delete, destroy, and purge the personal

2

identifying information of Plaintiff and Class Members unless

3

Defendant can provide to the Court reasonable justification for

4

the retention and use of such information when weighed against

5

the privacy interests of Plaintiff and Class Members;

6

7

iv.    requiring    Defendant    to    implement    and    maintain    a

8

comprehensive Information Security Program designed to

9

protect the confidentiality and integrity of the Private

10

Information of Plaintiff and Class Members;

11

12

13

v.    prohibiting    Defendant    from    maintaining    the    Private

14

Information of Plaintiff and Class Members on a cloud-based

15

database;

16

17

vi.    requiring Defendant to engage independent third-party security

18

auditors/penetration testers as well as internal security

19

personnel to conduct testing, including simulated attacks,

20

penetration tests, and audits on Defendant's systems on a

21

22

periodic basis, and ordering Defendant to promptly correct any

23

problems or issues detected by such third-party security

24

auditors;

25

26

27

28

-43-
CLASS ACTION COMPLAINT

vii.    requiring Defendant to engage independent third-party security auditors and internal personnel to run automated security monitoring;

viii.    requiring Defendant to audit, test, and train its security personnel regarding any new or modified procedures; requiring Defendant to segment data by, among other things, creating firewalls and access controls so that if one area of Defendant's network is compromised, hackers cannot gain access to other portions of Defendant's systems;

ix.    requiring Defendant to conduct regular database scanning and securing checks;

x.    requiring Defendant to establish an information security training program that includes at least annual information security training for all employees, with additional training to be provided as appropriate based upon the employees' respective responsibilities with handling personal identifying information, as well as protecting the personal identifying information of Plaintiff and Class Members;

xi.    requiring Defendant to routinely and continually conduct internal training and education, and on an annual basis to

inform internal security personnel how to identify and contain a breach when it occurs and what to do in response to a breach;

xii.   requiring Defendant to implement a system of tests to assess its respective employees' knowledge of the education programs discussed in the preceding subparagraphs, as well as randomly and periodically testing employees' compliance with Defendant's policies, programs, and systems for protecting personal identifying information;

xiii.  requiring Defendant to implement, maintain, regularly review, and revise as necessary a threat management program designed to appropriately monitor Defendant's information networks for threats, both internal and external, and assess whether monitoring tools are appropriately configured, tested, and updated;

xiv.   requiring Defendant to implement logging and monitoring programs sufficient to track traffic to and from Defendant's servers; and

xv.    for a period of 7 years, appointing a qualified and independent third party assessor to conduct a SOC 2 Type 2 attestation on an annual basis to evaluate Defendant's compliance with the

terms of the Court's final judgment, to provide such report to the Court and to counsel for the class, and to report any deficiencies with compliance of the Court's final judgment;

D.  For an award of actual damages, compensatory damages, and nominal damages, in an amount to be determined, and for punitive damages, as allowable by law;

E.  For an award of attorneys' fees and costs, and any other expenses, including expert witness fees;

F.  Pre- and post-judgment interest on any amounts awarded; and

G.  Such other and further relief as this court may deem just and proper.

## **DEMAND FOR JURY TRIAL**

Plaintiff demands a trial by jury on all issues so triable.

Dated: December 16, 2024          Respectfully submitted,

*/s/ M. Anderson Berry*
M. Anderson Berry (262879)
Gregory Haroutunian (330263)
**CLAYEO C. ARNOLD**
**A PROFESSIONAL CORPORATION**
12100 Wilshire Boulevard, Suite 800
Los Angeles, CA 90025
Telephone: (916) 239-4778
*aberry@justice4you.com*
*gharoutunian@justice4you.com*

J. Gerard Stranch, IV (*pro hac vice* forthcoming)
Grayson Wells (*pro hac vice* forthcoming)
**STRANCH, JENNINGS & GARVEY, PLLC**

The Freedom Center
223 Rosa L. Parks Avenue, Suite 200
Nashville, TN 37203
Tel: (615) 254-8801
*gstranch@stranchlaw.com*
*gwells@stranchlaw.com*

*Attorneys for Plaintiff and the Putative Class*

CLASS ACTION COMPLAINT